*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A13-2093**

Michael Alan Mooney,
Appellant,

vs.

UnitedHealth Group Incorporated,
Respondent,

Stephen L. Hemsley,
Respondent,

William W. McGuire,
Respondent,

David J. Lubben,
Respondent

**Filed July 21, 2014**
**Affirmed**
**Peterson, Judge**

Hennepin County District Court
File No. 27-CV-12-22115

Michael Alan Mooney, Plymouth, Minnesota (pro se appellant)

Peter W. Carter, Michelle S. Grant, Shannon L. Bjorklund, Dorsey & Whitney LLP, Minneapolis, Minnesota (for respondents UnitedHealth Group Incorporated and Stephen L. Hemsley)

Steve Gaskins, Gaskins, Bennett, Birrell, Schupp, L.L.P., Minneapolis, Minnesota (for respondent William W. McGuire)

Richard G. Mark, Briggs and Morgan, Minneapolis, Minnesota (for respondent David J. Lubben)

Considered and decided by Peterson, Presiding Judge; Connolly, Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**PETERSON**, Judge

Pro se appellant Michael Mooney appeals from the judgment dismissing his claims against respondents. Because it appears to a certainty that no facts exist that would support granting the relief demanded, we affirm.

## FACTS

On October 14, 2012, appellant Michael Mooney filed separate complaints against respondents UnitedHealth Group Incorporated, Stephen Hemsley, David Lubben, and William McGuire alleging fraud and defamation. Respondents moved to dismiss the complaints. Appellant obtained counsel and moved for leave to amend his complaint and to consolidate the four actions.

The actions were consolidated, and appellant filed an amended complaint that alleged claims of fraudulent misrepresentation against UnitedHealth, Hemsley, and Lubben; and fraudulent nondisclosure and civil conspiracy against all respondents. Respondents moved to dismiss the claims brought in the amended complaint, and the district court granted the motion. Appellant's attorney withdrew from representation between the hearing date and the issuance of the district court's order. This appeal follows.

Appellant alleged the following facts in his amended complaint:

Appellant began working as a manager at UnitedHealth, a public health-care-services company, in 1985. McGuire became CEO and Chairman of the Board of UnitedHealth around 1991. Lubben was hired as general counsel and secretary at UnitedHealth around 1996 and had worked previously as general counsel to the UnitedHealth Board of Directors. Hemsley was hired around 1997 as senior executive vice president and became chief operating officer in 1998. Hemsley was made president of the company in 1999, became a member of the board of directors in 2000, and was made chief executive officer and president in 2006.

During his time at UnitedHealth, appellant created the company's underwriting and pricing functions and was put in charge of those functions around 1988. He ran the pricing functions until 1998, and he was also required to participate in due-diligence activities when the company considered acquisitions. Beginning around 1999, appellant was a vice president. His compensation included stock options beginning around 1993.

Appellant was subject to UnitedHealth's policy that restricted trades in UnitedHealth stock. The policy included a blackout-period at the end of every quarter when no employee could make stock trades and an insider-trading restriction that prohibited individuals with "material non-public information" from using the information to their advantage.

In May 1995, appellant participated in UnitedHealth's due-diligence process for the acquisition of Metrahealth. From May through October 1995, appellant purchased and sold approximately 40,000 shares of UnitedHealth stock.

In 1999, the Securities and Exchange Commission (SEC) began investigating appellant's 1995 trades of UnitedHealth stock. Before August 9, 1999, Hemsley spoke to appellant on at least four occasions about a "possible investigation" into his 1995 trades. Appellant alleged that Hemsley "was supportive of" appellant, assured appellant that he would be "taken care of," told appellant that he would not need to get a severance or take early retirement, and said he would help appellant keep his stock options by hiring him at a company related to UnitedHealth.

The SEC filed a complaint against appellant in early August 1999, alleging that appellant made illegal trades in 1995 to take advantage of inside information. Around August 9, 1999, Hemsley and Lubben told appellant that UnitedHealth's "legal department had performed an objective and unbiased review" of appellant's May through October 1995 trading and determined that appellant violated UnitedHealth's policies and needed to resign and give up his stock options. Lubben then suspended appellant. Around August 16, 1999, Hemsley told appellant that he "had to do what Lubben says or [appellant] won't like the results," and appellant resigned from UnitedHealth as demanded.

In federal court in October 2001, appellant was convicted of securities fraud. Appellant alleged that his "conviction was based in large part on the false and misleading testimony of . . . Lubben." Appellant alleged that Hemsley, McGuire, and Lubben "took advantage of [appellant] in 1999 in order to improve the chances of success in their ongoing fraud."

In October 2006, UnitedHealth released the Wilmer Hale Report, which detailed fraud at the company that involved backdating employee stock-option awards from 1994 until 2006, with the largest part of the fraud occurring in 1999. Appellant alleged that none of the fraudulent actions was disclosed until 2006 or later and that the fraud would not have been possible absent a conspiracy among Hemsley, McGuire, and Lubben.

## D E C I S I O N

We review de novo a district court's grant of a motion to dismiss under Minn. R. Civ. P. 12.02(e). *Sipe v. STS Mfg., Inc.*, 834 N.W.2d 683, 686 (Minn. 2013). When reviewing a dismissal under Minn. R. Civ. P. 12.02(e), we consider only the facts alleged in the complaint and accept those facts as true. *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003). "A pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist that would support granting the relief demanded." *Krueger v. Zeman Constr. Co.*, 758 N.W.2d 881, 884 (Minn. App. 2008) (quotation omitted), *aff'd*, 781 N.W.2d 858 (Minn. 2010).

*Fraudulent Misrepresentation Claims*

Dismissal for failure to state a claim is proper when the complaint, on its face, "clearly and unequivocally" demonstrates that the statute of limitations has run and contains no facts that toll the running of the statute. *Pederson v. Am. Lutheran Church*, 404 N.W.2d 887, 889 (Minn. App. 1987), *review denied* (Minn. June 30, 1987). An action "for relief on the ground of fraud" must be commenced within six years of "the discovery by the aggrieved party of the facts constituting the fraud." Minn. Stat.

5

§ 541.05, subd. 1(6) (2012). "'[T]he facts constituting the fraud are deemed to have been discovered when, with reasonable diligence, they could and ought to have been discovered.'" *Bustad v. Bustad*, 263 Minn. 238, 242, 116 N.W.2d 552, 555 (1962) (quoting *First Nat'l Bank of Shakopee v. Strait*, 71 Minn. 69, 72, 73 N.W. 645, 646 (1898)). Failure to actually discover fraud does not extend the statute of limitations if the failure was inconsistent with reasonable diligence. *Id.* (quoting *First Nat'l Bank of Shakopee*, 71 Minn. at 72, 73 N.W. at 646).

In separate counts against UnitedHealth, Hemsley, and Lubben labeled as fraudulent misrepresentation, appellant alleged that each of these respondents made false representations regarding UnitedHealth's investigation into appellant's improper trading activities in 1995. The separate counts against each respondent alleged that the representations were made with knowledge that the representations were false, without knowing whether the representations were true or false, or without exercising reasonable care or competence. All of the counts alleged that appellant resigned from UnitedHealth in reasonable reliance on the false representations and, as a result, suffered damages.

To establish fraudulent misrepresentation a plaintiff must prove:

> (1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance.

*U.S. Bank v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011).

> To prevail on a negligent misrepresentation claim, the plaintiff must establish: (1) a duty of care owed by the defendant to the plaintiff; (2) the defendant supplies false information to the plaintiff; (3) justifiable reliance upon the information by the plaintiff; and (4) failure by the defendant to exercise reasonable care in communicating the information.

*Williams v. Smith*, 820 N.W.2d 807, 815 (Minn. 2012). A duty of care arises when the person making the representation is either "supplying information for the guidance of others in the course of a transaction in which one has a pecuniary interest, or in the course of one's business, profession or employment." *Safeco Ins. Co. of Am. v. Dain Bosworth Inc.*, 531 N.W.2d 867, 870 (Minn. App. 1995).

Appellant traded UnitedHealth stock in 1995. Appellant alleged that (1) false statements about the investigation into his 1995 trading activity were made to him before he resigned, (2) he resigned from UnitedHealth in reliance on the false statements, and (3) he suffered damages when he resigned. Appellant resigned in August 1999. Appellant knew the circumstances of his trading activity in 1995, and, by the time he resigned, he knew that Hemsley was pressuring him to resign and give up his stock options. With reasonable diligence, appellant could and ought to have discovered by the time that he was convicted in October 2001 that the statements that (1) UnitedHealth's legal department had performed an objective and unbiased review that revealed that appellant violated UnitedHealth's policies when he traded UnitedHealth stock and (2) Hemsley was going to take care of appellant and help him keep his stock options were false statements that constituted fraud, which means that the statute of limitations on

7

these claims began running no later than October 2001 and expired six years later in October 2007.

Appellant also alleged that Lubben was the most important witness at appellant's criminal trial and that when the FBI and the United States Attorney's Office investigated and prosecuted him for securities fraud, respondents made false statements about UnitedHealth's investigation into appellant's trading activity in 1995. Appellant was convicted in October 2001. With reasonable diligence, appellant could and ought to have discovered by the time he was convicted that respondents' statements to investigators and at trial were false statements that constituted fraud. Therefore, the statute of limitations on these claims began running in 2001 and expired in 2007, five years before appellant brought his action, and the district court properly dismissed these claims.

*Fraudulent-nondisclosure Claims*

If a party conceals a material fact that is "'peculiarly within his own knowledge, knowing that the other party acts on the presumption that no such fact exists, it is as much a fraud as if the existence of such fact were expressly denied, or the reverse of it expressly stated.'" *Richfield Bank & Trust Co. v. Sjogren*, 309 Minn. 362, 365, 244 N.W.2d 648, 650 (1976) (quoting *Thomas v. Murphy*, 87 Minn. 358, 361, 91 N.W. 1097, 1098 (1902)). But "[b]efore nondisclosure may constitute fraud, . . . there must be a suppression of facts which one party is under a legal or equitable obligation to communicate to the other, and which the other party is entitled to have communicated to him." *Id.* "A duty to disclose may exist when a fiduciary relationship exists between the

8

parties or when disclosure would be necessary to clarify information already disclosed." *Heidbreder v. Carton*, 645 N.W.2d 355, 367 (Minn. 2002).

Appellant alleged claims of fraudulent nondisclosure based on each respondent's failure to disclose "illegal stock-option backdating taking place at the company." Appellant alleged that, as a direct and proximate cause of the failure to disclose the backdating, he resigned from UnitedHealth.

Any failure to disclose that caused appellant to resign had to have occurred before appellant resigned in August 1999. Appellant argues, however, that the statute of limitations for his fraudulent-nondisclosure claims did not begin to run until October 2006, when UnitedHealth released the Wilmer Hale Report and appellant learned about the concealed backdating scheme.

Generally, "fraudulent concealment of the existence of a cause of action will toll the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity for discovery of the fact by the exercise of ordinary diligence." *Wild v. Rarig*, 302 Minn. 419, 450, 234 N.W.2d 775, 795 (1975). But we need not consider whether concealing the backdating scheme tolled the statute of limitations for appellant's fraudulent-nondisclosure claims because appellant did not plead any facts that show that the backdating scheme was material to his decision to resign.

Appellant alleged that the actions that Lubben took against him "were done with the intent and purpose of continuing the fraud and protecting the [respondents]." But this does not show that respondents concealed the fraud knowing that appellant would make

9

his decision to resign on the presumption that respondents were not engaged in a fraudulent scheme. Appellant resigned when respondents were engaged in the backdating scheme, but the allegations in appellant's complaint do not in any way show that knowledge about the backdating scheme was relevant to appellant's resignation. Therefore, it appears to a certainty that no facts exist that would support granting the relief demanded on appellant's fraudulent-nondisclosure claims, and the district court properly dismissed those claims.

*Civil Conspiracy Claim*

Appellant alleged that respondents conspired to commit fraud against him. "A conspiracy is a combination of persons to accomplish an unlawful purpose or a lawful purpose by unlawful means." *Harding v. Ohio Cas. Ins. Co. of Hamilton, Ohio*, 230 Minn. 327, 337, 41 N.W.2d 818, 824 (1950). Liability for conspiracy is predicated upon the tort committed by the conspirators, not on the conspiracy itself, *id.* at 338, 41 N.W.2d at 825, and a civil conspiracy claim must be supported by an underlying tort. *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. App. 1997). Because the district court properly dismissed appellant's fraudulent-misrepresentation and fraudulent-nondisclosure claims, appellant's civil conspiracy claim was no longer supported by an underlying tort. Therefore, the district court properly dismissed the civil conspiracy claim.

**Affirmed**.